**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |
|---|---|
| GINO D'OTTAVIO,<br>individually and on behalf of<br>all others similarly<br>situated,<br>          Plaintiff/Counter-<br>          Defendant,<br><br>v.<br><br>SLACK TECHNOLOGIES,<br>          Defendant/<br>          Counterclaimant. | 1:18-cv-09082-NLH-AMD<br><br>**OPINION** |

---

**APPEARANCES:**

GINO D'OTTAVIO
38 CHANCELLOR PARK DRIVE
MAYS LANDING, N.J. 08330

　　　*Plaintiff/Counter-Defendant pro se*

PAUL JEFFREY BOND
MARK S. MELODIA
HOLLAND & KNIGHT LLP
2929 ARCH STREET
SUITE 800
PHILADELPHIA, PA. 19104

　　　*On behalf of Defendant/Counterclaimant*

**HILLMAN**, District Judge

　　　Pending before the Court are Defendant Slack Technologies'
("Defendant") supplemental response and affidavit in support of
entry of default judgment with respect to its counterclaims
against Plaintiff Gino D'Ottavio ("Plaintiff").  In an earlier

opinion, the Court held that default judgment is an appropriate
sanction against Plaintiff pursuant to Federal Rule of Civil
Procedure 37, but withheld entry pending proof of the legitimacy
of Defendant's causes of action, their application to the facts
of this case, and damages.  (ECF 55 at 6-7).  Based on its
review of Defendant's supplemental response, the Court will
enter default judgment against Plaintiff as to Defendant's
breach-of-contract counterclaim and provide Defendant thirty
days to further support its request for attorney's fees and
costs.

## I.   Background

The underlying facts of this matter have been reviewed in
prior opinions, (ECF 36; ECF 55), and will be summarized here.
In May of 2018, Plaintiff filed the underlying two-count
Complaint alleging that Defendant both knowingly and/or
willfully and negligently violated the Telephone Consumer
Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq. (ECF 1 at ¶¶
47-53).  Plaintiff represented that he had received numerous
unsolicited text messages after signing up for Defendant's
service, (id. at ¶¶ 17-23), and purported to represent a class
of potential plaintiffs, (id. at ¶¶ 38-42).

Defendant averred in its Answer that Plaintiff is a serial
filer of TCPA claims who personally solicited 1,590 text
messages from Defendant by entering his own phone number and

clicking a "SEND LINK" button in an effort to manufacture a lawsuit.  (ECF 6 A at ¶¶ 1-2, 18; ECF 6 CC at ¶ 3).  Defendant also asserted four counterclaims – (1) willful and wanton misconduct, (ECF 6 CC at ¶¶ 35-38); (2) common-law fraud, (id. at ¶¶ 40-41); (3) breach of express contract, (id. at ¶¶ 48-53); and (4) breach of the implied covenant of good faith and fair dealing, (id. at ¶¶ 58-60).[1]  Defendant, citing its User Terms of Service, claimed that recovery of reasonable costs and attorney's fees are applicable to the latter two counterclaims based in contract.  (Id. at ¶¶ 55, 62).  Plaintiff "categorically denie[d] using any feature of Slack to text himself 1,590 times."  (ECF 16 ¶¶ 21, 23, 26).

On September 20, 2018, Plaintiff's counsel informed Magistrate Judge Ann Marie Donio of his intention to withdraw, (ECF 24), and shortly thereafter counsel moved to withdraw, (ECF 30), and Plaintiff moved to dismiss the Complaint with prejudice, (ECF 31).  Both motions maintained that Plaintiff did not solicit text messages from Defendant.  (ECF 30-1 at 1; ECF 31-1 at 1).  In the meantime, Defendant moved for sanctions pursuant to Federal Rule of Civil Procedure 11, citing forensic evidence contradicting the denials in Plaintiff's Answer to Counterclaims and alleging that Plaintiff's counsel failed to

---

[1] As noted in a prior opinion, Defendant's counterclaims did not cite a specific state's law.  (ECF 55 at 7 n.6).

perform a reasonable investigation of Plaintiff's claims.  (ECF 28 at 9-10).  The Court granted Plaintiff's motion to dismiss but denied Plaintiff's counsel's motion to withdraw and Defendant's motion for sanctions (ECF 36), the latter pending discovery, (id. at 13-14).  In a corresponding order, Plaintiff was instructed to file a letter within twenty days indicating whether he consented to counsel's withdrawal, understood that he remained subject to Defendant's counterclaims and request for sanctions, and wished to represent himself or hire new counsel. (ECF 37).

Plaintiff belatedly informed the Court through counsel that he did not consent to counsel's withdrawal, understood the pending actions, and did not know how he would proceed if counsel were to withdraw.  (ECF 42).  Plaintiff's counsel, on the same day, again moved to withdraw, (ECF 43), explaining that Plaintiff had been ignoring counsel for approximately nine months, (ECF 43-1 at ¶ 23 n.1).  The Court granted counsel's motion to withdraw.  (ECF 45).  Defendant moved for summary judgment, (ECF 48), claiming that Plaintiff failed to participate in discovery – including failure to appear for his deposition or respond to Defendant's requests for admissions, (ECF 50 at ¶¶ 14-15; ECF 52 at 1).  The Court denied the motion without prejudice and entered an order to show cause giving Plaintiff twenty days to state why his Answer to Counterclaims

should not be struck and default judgment entered against him, noting that Plaintiff had failed to participate in discovery or comply with discovery orders to provide computers and cell phones for forensic examination.  (ECF 54).

In response to Plaintiff's continued failure to comply with court orders and otherwise defend against Defendant's counterclaims, the Court issued an opinion holding that the remedies provided by Federal Rule of Civil Procedure 37, specifically entry of default judgment, were warranted and instructed Defendant to offer support for both its counterclaims and requested damages.  (ECF 55).  Pending before the Court are Defendant's supplemental brief and affidavit regarding damages. (ECF 57; ECF 58).

## II.  Discussion

### A. Jurisdiction

The Court has jurisdiction over Defendant's counterclaims because the parties are of different states and the amount in controversy exceeds $75,000.  See 28 U.S.C. 1332(a); see also Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 836 (3d Cir. 2011) ("Generally speaking, the dismissal of the complaint 'will not preclude adjudication of a counterclaim over which the court has an independent basis of jurisdiction.'" (quoting Rengo Co. Ltd. v. Molins Mach. Co., Inc., 657 F.2d 535, 539 (3d Cir. 1981)).  The record indicates that Plaintiff is a citizen of New

Jersey and Defendant is a citizen of California.  Defendant asserts that the minimum controversy requirement is met as it has accumulated $143,220.88 in legal fees responding to this action.  (ECF 57 at 9; ECF 58).  Though attorney's fees are generally not included in determining the amount in controversy, such fees may be included when "their payment is provided for by the terms of an underlying contract."  Auto–Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 397 n.11 (3d Cir. 2016).  It is Defendant's burden to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, but this "burden is not especially onerous."  Id. at 395.

Determining whether the claimant fails to satisfy the jurisdictional amount "should involve the court in only minimal scrutiny of the plaintiff's claims."  Id. (quoting Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997)).  Defendant's User Terms of Service provide that "[i]n any action or proceeding to enforce rights under the User Terms, the prevailing party will be entitled to recover its reasonable costs and attorney's fees," (ECF 6-4 at 4), and the Court accepts the signed affidavit of Gabriel E. Stern, Vice President of Legal for Defendant, claiming that Defendant spent $143,220.88 responding to this action as satisfying the preponderance standard, (ECF 58); see also Franklin Mut. Ins. Co. v. Broan-Nutone, LLC, No. 10-04845, 2013 WL 12155424, at *2

6

(D.N.J. July 23, 2013) (accepting an affidavit stating that
Plaintiff believed that the amount in controversy exceeded
$75,000 at the time the complaint was filed).

   **B. Applicable Law**

   Having concluded that the Court has diversity jurisdiction
over Defendant's counterclaims, the Court must next apply the
choice-of-laws rules of New Jersey, the forum state, to
determine whether the substantive law of New Jersey or
California should apply.  See Aleynikov v. Goldman Sachs Grp.,
Inc., No. 12-5994, 2013 WL 5816941, at *3 (D.N.J. Oct. 29, 2013)
(citing Warriner v. Stanton, 475 F.3d 497, 499–500 (3d Cir.
2007)).  Courts in New Jersey apply the two-pronged tested of
the Restatement (Second) of Conflict of Laws.  Colony Ins. Co.
v. Aspen Specialty Ins. Co., 564 F. Supp. 3d 343, 349 (D.N.J.
Sept. 30, 2021) (citing Curtiss-Wright Corp. v. Rodney Hunt Co.,
1 F. Supp. 3d 277, 283 (D.N.J. Feb. 18, 2014)).  "[T]he first
step is to determine whether an actual conflict exists," P.V. ex
rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008), which
is "done by examining the substance of the potentially
applicable laws to determine whether 'there is a distinction'
between them," id. (internal quotations omitted) (quoting
Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  The laws
of two states are in actual conflict when the outcome of the
case may turn on the application of one state's law over the

other or "when the law of one interested state is 'offensive or repugnant' to the public policy of the other." In re Accutane Litig., 194 A.3d 503, 517 (N.J. 2018) (quoting Cont'l Ins. Co. v. Honeywell Int'l, Inc., 188 A.3d 297, 311 (N.J. 2018)).  If there is no actual conflict, the choice-of-laws issue is resolved and the analysis ends.  P.V., 962 A.2d at 460.

If an actual conflict between the laws does exist, the analysis proceeds to its second step and the court "must determine 'which state has the "most significant relationship" to the claim at issue by weighing the factors' in the applicable section of the Restatement (Second) of Conflict of Laws." Mills v. Ethicon, Inc., 406 F. Supp. 3d 363, 373 (D.N.J. Aug. 27, 2019) (quoting Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 462 (D.N.J. Feb. 11, 2009)).  Section 145 of the Restatement, pertaining to general rules of torts, instructs that the place of injury; place of conduct that caused the injury; domicile, residence, nationality, place of incorporation, and place of business of the parties; and place where the relationship of the parties centered are to be weighed to determine the applicable law.  Restatement (Second) of Conflict of Laws § 145(2) (1971); see also P.V., 962 A.2d at 461-63 (applying Section 145).  Section 188 of the Restatement, referring to contracts in which the parties did not effectively choose an applicable law, provides that the place of

contracting; place of negotiation; place of performance;
location of the subject matter; and domicile, residence,
nationality, place of incorporation, and place of business of
the parties should be considered.  Restatement § 188(2); see
also Cont'l Ins. Co., 188 A.3d at 318-20 (applying Section 188).

Defendant's counterclaims involve both contract and tort.
The User Terms of Service cited in Defendant's Answer include a
"Governing Law; Venue; Waiver of Jury Trial; Fees" section that
states that disputes arising out of the terms or Acceptable Use
Policy "will be governed exclusively by the same applicable
governing law of the Contract," without expressly identifying
the governing laws.  (ECF 6-4 at 4).  Defendant's Acceptable Use
Policy does not provide any additional detail.  (ECF 6-10).
Defendant asserts that "New Jersey and California provide the
same protections and remedies.  Therefore, there is no choice of
law problem to solve."  (ECF 57 at 1).  Upon review of the
relevant case law in both New Jersey and California, the Court
agrees with Defendant's assessment.[2]  The Court concludes that

---

[2] The elements of each of Defendant's counterclaims are
substantially the same in both states as detailed below.

Willful and wanton misconduct: Under California law, willful
misconduct is identified as "an aggravated form of negligence"
requiring "(1) actual or constructive knowledge of the peril to
be apprehended, (2) actual or constructive knowledge that injury
is probable, as opposed to a possible, result of the danger, and
(3) conscious failure to act to avoid the peril."  Doe v. U.S.
Youth Soccer Assn., Inc., 214 Cal. Rptr. 3d 552, 573 (Cal. Ct.

App. 2017) (quoting <u>Berkley v. Dowds</u>, 61 Cal. Rptr. 3d 304, 312 (Cal. Ct. App. 2007)).  New Jersey law similarly views willful or wanton conduct as an "even higher standard than gross negligence" requiring that the "defendant acted or failed to act with knowledge that injury would likely or probably result and with reckless indifference to that consequence." <u>Franco v. Fairleigh Dickinson Univ.</u>, 248 A.3d 1254, 1270-71 (N.J. Super. Ct. App. Div. 2021) (citing <u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 142 A.3d 742 (N.J. 2016) and <u>Foldi v. Jeffries</u>, 461 A.2d 1145 (1983)).  A negligence claim requires (1) a duty of care owed, (2) breach of that duty, (3) injury proximately caused by the breach, and (4) damages in both states.  <u>See, e.g.</u>, <u>Coleman v. Martinez</u>, 254 A.3d 632, 642 (N.J. 2021); <u>Colonial Van & Storage, Inc. v. Superior Ct.</u>, 291 Cal. Rptr. 3d 581, 589 (Cal. Ct. App. 2022).  The Court is satisfied that both states provide a cause of action for willful and wanton misconduct and that their standards are substantially similar.

Common-law fraud:  To establish proof of common-law fraud in New Jersey, a plaintiff must show (1) a material representation by the defendant of a past or present fact, (2) the defendant's knowledge or belief of the falsity of that fact, (3) intent for the plaintiff to rely on that representation, (4) reasonable reliance by the plaintiff, and (5) resulting damages.  <u>Liberty Mut. Ins. Co. v. Land</u>, 892 A.2d 1240, 1247 (N.J. 2006) (citing <u>Gennari v. Weichert Co. Realtors</u>, 691 A.2d 350 (N.J. 1997)). California law requires the same five elements: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages. <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 102 P.3d 268, 274 (Cal. 2004) (citing <u>Lazar v. Superior Ct.</u>, 909 P.2d 981 (Cal. 1996)).  The Court concludes that common-law fraud is substantially the same in New Jersey and California.

Breach of contract: To prevail in a breach-of-contract claim under New Jersey law a plaintiff must prove (1) that the parties entered into a contract, (2) the plaintiff "did what the contract required them to do," (3) the defendant "did not do what the contract required them to do," and (4) the defendant's breach caused a loss for the plaintiff.  <u>Goldfarb v. Solimine</u>, 245 A.3d 570, 577 (N.J. 2021) (quoting <u>Globe Motor Co. v. Igdalev</u>, 139 A.3d 57, 64 (N.J. 2016)).  California requires the same four-part test, (1) the existence of a contract, (2) the plaintiff's performance or excuse from performance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. <u>Oasis West Realty, LLC v. Goldman</u>, 250 P.3d 1115, 1121 (Cal.

the outcomes of Defendant's counterclaims do not turn on whether
New Jersey or California law is applied and that the applicable
laws of the states are not "offensive or repugnant" to one
another,  In re Accutane Litig., 194 A.3d at 517 (quoting Cont'l
Ins. Co., 188 A.3d at 311), and therefore holds that no "actual
conflict exists," P.V., 962 A.2d at 460.

### III. **Analysis**

#### A. **Default Judgment**

Federal Rule of Civil Procedure 37 provides that default

---

2011).  The Court finds these standards to be substantially the
same.

Implied covenant of good faith and fair dealing: California law
imposes a similar standard on breach of the implied covenant of
good faith and fair dealing as a breach-of-contract-claim, the
difference being "that instead of showing that defendant
breached a contractual duty, the plaintiff must show, in
essence, that defendant deprived the plaintiff of a benefit
conferred by the contract in violation of the parties'
expectations at the time of contracting." Boland, Inc. v. Rolf
C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. Feb.
4, 2010) (citing Carma Devs., Inc. v. Marathon Dev. Cal., Inc.,
826 P.2d 710 (Cal. 1992)).  New Jersey similarly recognizes a
duty of good faith and fair dealing in all contracts that
mandates that "neither party shall do anything which will have
the effect of destroying or injuring the right of the other
party to receive the fruits of the contract." Roach v. BM
Motoring, LLC, 155 A.3d 985, 992 (N.J. 2017) (quoting Sons of
Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997)).
The Court finds that California and New Jersey both place a
standard on contracting parties to not upset the expectations of
the other party.

judgment may be entered as a sanction based on a party's failure
to comply with a discovery order.  Fed. R. Civ. P.
37(b)(2)(A)(vi).  The Court determines whether default judgment
is appropriate by weighing the factors set forth by the Third
Circuit in Poulis v. State Farm Fire & Casualty Co., 747 F.2d
863 (3d Cir. 1984)).  Malik v. Hannah, 661 F. Supp. 2d 485, 492
n.5 (D.N.J. Sept. 24, 2009).  Those factors to be "balanced"
are: (1) the sanctioned party's personal responsibility, (2) the
prejudice to the opposing party caused by the failure to meet
scheduling orders and provide discovery, (3) the history of
dilatoriness, (4) whether the party or counsel's conduct was
willful or in bad faith, (5) the effectiveness of sanctions
other than dismissal, and (6) the merits of the claim or
defense.  Poulis, 747 F.2d at 868.

The Court conducted this analysis in a prior opinion,
concluding that: (1) Plaintiff is personally responsible for his
inaction as he is proceeding pro se, (2) Defendant is prejudiced
by Plaintiff's failure to participate as it prevents it from
pursuing its counterclaims, (3) Plaintiff has not contacted the
Court following his counsel's withdrawal, (4) Plaintiff's
conduct appeared to be intentional, (5) no other sanction would
be effective given Plaintiff's complete failure to respond to
discovery requests and orders, and (6) the Court could not
assess the merit of defenses without Plaintiff's participation.

12

(ECF 55 at 6).  Left open were whether each of Defendant's counterclaims constituted a legitimate cause of action and whether the factual allegations, if admitted, supported each counterclaim.  (Id. at 7).

The Court will undertake those analyses below.  In so doing, the Court will treat the facts set forth in Defendant's Request for Admissions, (ECF 49-1), sent via certified mail to Plaintiff's last known address on August 20, 2019, (ECF 49-2) as admitted.  See Fed. R. Civ. P. 36(a)(3); Sunoco, Inc. (R & M) v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 576 (D.N.J. June 17, 2008) ("Unless the party who was served with the requests responds within 30 days of being served, the matters are deemed admitted.  A matter admitted under Rule 36 is 'conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.'" (citing Rule 36)).

### 1. Willful and Wanton Misconduct

First evaluating Defendant's counterclaim for willful and wanton misconduct, the Court repeats that willful and wanton misconduct sets a higher standard than gross negligence and requires a showing that the offending party "acted or failed to act with knowledge that injury would likely or probably result and with reckless indifference to that consequence." Franco, 248 A.3d at 1271.  A negligence claim requires a duty of care, breach of that duty, injury proximately caused by the breach,

13

and damages.  Coleman, 254 A.3d at 642.

To support its counterclaim, Defendant advances that Plaintiff is a serial filer of TCPA claims and was thus aware of "the big-ticket threat he posed by manufacturing a claim of TCPA liability" by sending himself 1,590 text links – an "an intentionally wrongful act."[3]  (ECF 57 at 2-3).  The Court reads Defendant's allegations as focusing on the supposed recklessness of Plaintiff's conduct without consideration of the underlying requirements for a negligence cause of action.  Negligence, even with the gloss of willful and wanton recklessness, requires damages as an element.  Here, as set forth in more detail below, the only claim for damages supported by Defendant is a claim for attorney's fees.  Ordinarily, attorney's fees are not a valid for basis of damages under common law negligence.  Accordingly, the Court will decline to enter default judgment with respect to its willful and wanton misconduct counterclaim.[4]

---

[3] Though intentional conduct is "different in degree" rather than "different in kind" from negligence and willful and wanton misconduct, see Blazovic v. Andrich, 590 A.2d 222, 231 (N.J. 1991) (discussing comparative fault), the Court notes that while alternative pleading is permissible it does not follow that intentional conduct can be used to sustain a final judgment for both an intentional tort, such as fraud, and a negligence or willful and wanton misconduct action, see Zuidema v. Pedicano, 860 A.2d 992, 998 (N.J. Super. Ct. App. Div. 2004) (discussing sexual assault in the context of a medical negligence claim and finding "an incongruity in allowing a plaintiff to prove a negligence action based on a defendant's intentional conduct").

[4] It could also be said that Defendant has failed to establish

### 2. Common-law Fraud

The Court next evaluates whether Defendant has established a valid counterclaim for common-law fraud.  This presents a closer question because, as noted, the gravamen of Defendant's counterclaim is Plaintiff's blatant and intentional misleading conduct designed for financial gain.  A fraud claim requires proof of (1) a material misrepresentation of an existing or prior fact, (2) the perpetrator's knowledge of the falsity, (3) an intent that the other party will rely on the misrepresentation, (4) reasonable reliance, and (5) damages.  Liberty Mut. Ins. Co., 892 A.2d at 1247.

The Court finds that Plaintiff has admitted that he sent himself download links for Defendant's mobile application 1,590 times between April 26, 2017 and July 26, 2017.  (ECF 49-1 at ¶¶ 3-4).  Plaintiff represented in his Complaint that he did not wish to receive these messages and revoked any consent he may have given to have them sent to him.  (ECF 1 at ¶¶ 20, 24-25).

---

the element of a duty owed by Plaintiff outside of their contractual arrangement, another essential element of a negligence claim.  See Perkins v. Washington Mut., FSB, 655 F. Supp. 2d 463, 471 (D.N.J. Sept. 4, 2009) ("[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.")(quoting Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (N.J. 2002)).  Of course, a contract is not a shield to commit a fraud.  But that argument proves too much.  In the end, the proofs demonstrate that Defendant's counterclaim is not one of recklessness or negligence but one of fraud and breach of contract.

The Court is therefore satisfied that Plaintiff represented to Defendant that he wished to download its mobile application when, in fact, he did not.  A review of the download screen makes clear that by typing in a phone number and clicking "SEND LINK," Plaintiff would be sent a download link.  (ECF 6-2 at 1). The Court finds that, by entering his phone number and clicking "SEND LINK," Plaintiff demonstrated an intent that Defendant would rely on his seemingly genuine interest in receiving a download link.

The Court further holds that if a misrepresentation that induces a purchase may satisfy the reasonable reliance element, see Dreier Co., Inc. v. Unitronix Corp., 527 A.2d 875, 883 (N.J. Super. Ct. App. Div. 1986) (reversing summary judgment and holding that false representations that a computer system would satisfy a customer's needs resulting in the customer paying the contract purchase price met the elements of common-law fraud), so too can false representations that induce sales or solicitations.  This is especially so as the download screen clearly indicated to users that a link would be sent to them if they typed in their phone number and clicked the "SEND LINK" button.  (ECF 6-2 at 1).

However, as with Plaintiff's willful and wanton misconduct claim, the Court must depart with Defendant as to damages.  In its Answer, Defendant alleged that Plaintiff's fraudulent

16

conduct resulted in "financial harm, business disruption,
reputational injury, and the costs of investigation and
defense." (ECF 6CC at ¶ 46). Defendant reiterated those claims
for damages in its memorandum in support of its motion for
summary judgment but clarified that it "seeks only reimbursement
of attorneys' fees," (ECF 51 at 11), and appears to repeat that
position in its supplemental submission by claiming that it "was
damaged by being forced to incur legal fees," (ECF 57 at 4).
Later in its submission, while referencing its breach-of-
contract counterclaim, Defendant cites its User Terms of Service
as entitling it to reasonable costs and attorney's fees. (Id.
at 6). Indeed, Defendant appears singularly focused on recovery
of its legal fees, (ECF 51 at 11; ECF 57 at 4), but does not
evidence entitlement to them outside of its contract with
Plaintiff.

As ironic as it may seem given Plaintiff's intentionally
deceptive scheme, Defendant's failure to establish damages
outside of contract-based attorney's fees dooms its fraud claim.
Under the American Rule "[e]ach litigant pays his own attorney's
fees, win or lose, unless a statute or contract provides
otherwise." Harrison Rsch. Lab'ys, Inc, v, HCRAmerica, LLC, No.
09-cv-6326, 2012 WL 12897887, at *3 (D.N.J. Nov. 9, 2012)
(quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242,
253 (2010)). Absent a separate measure of some other form of

17

direct or collateral damages following from Plaintiff's aborted fraud scheme, an essential element of the fraud claim is missing.  Nor does the contractually based fee-shifting change the calculus as this triggers the economic loss doctrine which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract."  See State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 676 (D.N.J. Jan. 15, 2009) (quoting Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. Sept. 30, 2002)).[5]  The Court therefore holds that Defendant's fraud counterclaim lacks an essential element and as proven is barred by the economic loss doctrine.  Entry of default judgment on that claim is therefore not warranted.

### 3. Breach of Contract

However, the Court holds that the facts as alleged and admitted support Defendant's breach-of-contract counterclaim. To repeat, a breach-of-contract claim requires (1) a contract, (2) compliance by one party, (3) noncompliance by the other, and

---

[5] California law similarly recognizes that the economic loss doctrine prohibits the recovery of tort damages in breach-of-contract cases and "bar[s] fraud claims where 'the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract.'"  See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc., 868 F. Supp. 2d 983, 991 (E.D. Cal. Apr. 11, 2012) (quoting Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc., 629 F. Supp. 2d 1135, 1146 (E.D. Cal. May 27, 2009)).

(4) injury caused by the noncompliance.  See Goldfarb, 245 A.3d at 577.

Here, Defendant's User Terms of Service created a contract between Plaintiff and Defendant.  Atop the first page under a bold "First things First" heading, the terms state that they represent a binding contract between Defendant and users and, as part of that contract, users agree to comply with Defendant's Acceptable Use Policy.  (ECF 6-4 at 1); see also Caspi v. Microsoft Network, L.L.C., 732 A.2d 528, 531-33 (N.J. Super. Ct. App. Div. 1999) (enforcing the forum-selection clause of an online subscriber agreement).  Plaintiff, through his failure to respond, admits that he used Defendant's service and accepted the terms of both the User Terms of Service and Acceptable Use Policy.  (ECF 49-1 at ¶¶ 12-13).

Defendant's Acceptable Use Policy prohibited users from "impersonat[ing] any person or entity, including, but not limited to, an employee of ours."  (ECF 6-10 at 2).  By sending himself download links, (ECF 49-1 at ¶¶ 3-4), and later representing that such messages were sent by "Defendant . . . or its agent," (ECF 1 at ¶ 29), the Court holds that Plaintiff violated Defendant's Acceptable Use Policy.  Finally, the Court finds that Defendant was injured by Plaintiff's breach by being forced to engage in this litigation and incur related expenses. Contract terms providing that the injured party may recover

attorney's fees and costs as part of its damages are enforceable
under New Jersey law,[6] see Red Roof Franchising, LLC v. AA Hosp.
Northshore, LLC, 877 F. Supp. 2d 140, 154 (D.N.J. June 28, 2012)
(enforcing an attorney-fee provision in a franchise agreement);
Magnet Res., Inc. v. Summit MRI, Inc., 723 A.2d 976, 985 n.6
(N.J. Super. Ct. App. Div. 1998) (citing Cmty. Realty Mgmt.,
Inc. v. Harris, 714 A.2d 282 (N.J. 1998) and Cohen v. Fair Lawn
Dairies, Inc., 206 A.2d 585 (N.J. Super. Ct. App. Div. 1965)),
and Defendant's User Terms of Service expressly provide that
"[i]n any action or proceeding to enforce rights under the User
Terms, the prevailing party will be entitled to recover its
reasonable costs and attorney's fees," (ECF 6-4 at 4).
Defendant has thus articulated a valid cause of action for
breach of contract supported by the record and the Court will
enter default judgment as to that counterclaim.

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, having concluded that Defendant is entitled to
default judgment as to its breach-of-contract counterclaim, the
Court turns to Defendant's counterclaim alleging that Plaintiff

---

[6] California law also "entitles a prevailing party to reasonable
attorney's fees '[i]n any action on a contract, where the
contract specifically provides that attorney's fees and costs,
which are incurred to enforce that contract.'" Indian Hills
Holdings, LLC v. Frye, 572 F. Supp. 3d 872, 892 (S.D. Cal. Nov.
17, 2021) (alteration in original) (quoting Cal. Civ. Code §
1717(a)).

violated the implied covenant of good faith and fair dealing.
The covenant is present in every contract and prohibits a party
from depriving the other from receiving "the fruits of the
contract." Sons of Thunder, Inc., 690 A.2d at 587 (quoting
Palisades Props., Inc. v. Brunetti, 207 A.2d 522, 531 (N.J.
1965)). Important to a finding of a breach of the implied
covenant is "[p]roof of 'bad motive or intention'" and evidence
that the offending party "has engaged in some conduct that
denied the benefit of the bargain originally intended by the
parties." Brunswick Hills Racquet Club, Inc. v. Route 18
Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005) (quoting
Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1130 (N.J. 2001)
and 23 Williston on Contracts § 63:22, at 513-14 (Lord ed.
2002)). Benefits of the bargain include the value of products,
see Spring Motors Distribs., Inc. v. Ford Motor Co., 489 A.2d
660, 665 (N.J. 1985) ("A direct economic loss includes the loss
of the benefit of the bargain, *i.e.,* the difference between the
value of the product as represented and its value in its
defective condition."), and performance, see Center 48 Ltd.
P'ship v. May Dept. Stores Co., 810 A.2d 610, 623 (N.J. Super.
Ct. App. Div. 2002) (finding rescission to be inappropriate as
both parties substantially performed and the defendant "got the
benefit of its bargain for more than ten years.").

Here, the Court agrees that Plaintiff breached his contract

with Defendant and acted in bad faith by sending himself text links, (ECF 49-1 at ¶¶ 3-4), and manufacturing the underlying lawsuit.  Defendant claims that Plaintiff's actions "destroyed and injured Defendant's rights to receive the fruit of the User Terms by imposing on Slack the need to defend against a manufactured TCPA suit."  (ECF 57 at 7).  While Defendant no doubt did not expect to be forced into litigation, it does not follow that that particular expectation was an anticipated benefit from the contract itself.[7]  That articulation of the benefit of not being sued on a false claim is really only the flip side of the harm caused by Plaintiff.

As the Court reads Defendant's supplemental submission, it claims it was deprived of the benefit of its bargain with Plaintiff due to the very same conduct that gives rise to Defendant's breach-of-contract counterclaim.  However, those

---

[7] An illustrative example of a breach of the implied covenant separate from a breach of contract can be found in Wilson, which dealt with a contract that provided the defendant with unilateral control to set gasoline prices sold to franchisees. 773 A.2d at 1123-24.  In reversing summary judgment, the Supreme Court of New Jersey concluded that the implied covenant could be breached in such an arrangement if the party with authority to set prices exercises that authority "arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract."  Id. at 1130.  "Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial."  Id.

same actions cannot support a finding that Plaintiff breached the implied covenant of good faith and fair dealing.  That is because "under New Jersey law, '[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.'" Irene v. Michael Whaley Interiors, Inc., No. 19-14998, 2020 WL 759573, at *2 (D.N.J. Feb. 13, 2020) (alteration in original) (quoting TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013)); see also Wade v. Kessler Inst., 798 A.2d 1251, 1262 (N.J. 2002) (finding "no analytical basis to include an implied covenant claim among the asserted breaches of the [employment] manual's express terms").[8]

This is not to say that the Court cannot contemplate any possible breach of the implied covenant from a cynical scheme,

---

[8] California law also requires that an alleged breach of the implied covenant of good faith and fair dealing not rely on the same conduct as a breach-of-contract claim.  See Longest v. Green Tree Servicing LLC, 74 F. Supp. 3d 1289, 1300 (C.D. Cal. Feb. 9, 2015); see also Diaz v. Fed. Express Corp., 373 F. Supp. 2d 1034, 1066 (C.D. Cal. June 21, 2005) ("[I]f the allegations in a claim for breach of the implied covenant of good faith and fair dealing 'do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'" (quoting Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 272 Cal. Rptr. 387, 400 (Cal. Ct. App. 1990)).

such as this one, in which one of the contracting parties seeks to extort money from the other through a baseless lawsuit. Plaintiff's actions as admitted were the antithesis of fair dealing and acting in good faith.  However, because Defendant alleges the same general conduct – namely Plaintiff sending himself the text messages – in both counterclaims, the Court will decline to enter default judgment as to a breach of the implied covenant of good faith and fair dealing after having already held that Plaintiff breached his contract with Defendant due to the same conduct.

### B. Damages

Having concluded that Defendant is entitled to default judgment as to its counterclaim for breach of contract, the Court must now determine damages.  Defendant asserts in its supplement submission that it is entitled to "reasonable costs and attorney's fees" for its breach-of-contract counterclaim based on its User Terms of Service.  (ECF 57 at 6).

"'The most useful starting point for determining the amount of a reasonable fee' is the lodestar calculation." United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Under this approach, courts multiply the reasonable number of hours expended by a reasonable hourly rate. Id.

In the affidavit accompanying Defendant's supplemental submission, Stern asserts that Defendant paid attorney's fees totaling $143,220.88 to two law firms: $44,435.56 to Reed Smith and $98,785.32 to Holland & Knight.  (ECF 58 at ¶ 4).  The affidavit does not attempt to provide support for the reasonableness of those fees, instead stating that "[u]pon the entry of default judgment in [Defendant's] favor, Defendant will submit an itemized application for such attorney's fees."  (Id. at ¶ 5).

The Court therefore cannot determine the reasonableness of Defendant's requested fees or award damages on the present record and, as requested, invites further submissions.  The Court reminds Defendant that Local Rule 54.2 pertaining to motions for fees and expenses requires documentation detailing the nature of services provided, dates of service and time spent, normal billing rates, and similar information.  L. Civ. R. 54.2(a).  Lodestar analyses require similar specificity, including "fairly definite information as to hours devoted to various general activities . . . and the hours spent by various classes of attorneys."  See United Auto. Workers Local 259 Soc. Sec., 501 F.3d at 291 (quoting Evans v. Port Auth of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001)).  Further, "in most cases, the relevant rate is the prevailing rate in the forum of the litigation," Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,

426 F.3d 694, 705 (3d Cir. 2005).  The prevailing rate in this vicinage is the Philadelphia/New Jersey legal market. Sidewinder Films, LLC v. Sidewinder Films, LLC, No. 19-13992, 2022 WL 6964829, at *8 (D.N.J. Oct. 11, 2022).

## IV. Conclusion

For the reasons stated above, default judgment will be entered as to Defendant's breach-of-contract counterclaim and denied as to its counterclaims for willful and wanton misconduct, fraud, and the implied covenant of good faith and fair dealing.  The Court will grant Defendant thirty (30) days leave to supplement its application for attorney's fees.

An Order consistent with this Opinion will be entered.


Date: October 26, 2022                  s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.