```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| GINO D'OTTAVIO, individually and on behalf of all others similarly situated,<br>      Plaintiff/Counter-Defendant,<br><br>v.<br><br>SLACK TECHNOLOGIES,<br>      Defendant/Counterclaimant. | 1:18-cv-09082-NLH-AMD<br><br>OPINION |

**APPEARANCES:**

GINO D'OTTAVIO
38 CHANCELLOR PARK DRIVE
MAYS LANDING, N.J. 08330

    *Plaintiff/Counter-Defendant pro se*

PAUL JEFFREY BOND
MARK S. MELODIA
HOLLAND & KNIGHT LLP
2929 ARCH STREET
SUITE 800
PHILADELPHIA, PA. 19104

    *On behalf of Defendant/Counterclaimant*

**HILLMAN**, District Judge

    Pending before the Court is Defendant Slack Technologies' ("Defendant") supplemental submission in support of its request for attorney's fees and costs. (ECF 64). For the reasons expressed below, Defendant's motion will be granted in part and

the Court will award fees and costs totaling $160,602.37.

## I. Background

The facts of this case have been articulated in the Court's prior opinions, (ECF 36; ECF 55; ECF 62), and will not be reviewed in detail here.  On May 11, 2018, Plaintiff Gino D'Ottavio ("Plaintiff") filed the underlying complaint alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq., by sending him numerous unsolicited text messages. (ECF 1).  Defendant responded in its answer that Plaintiff is a serial filer of TCPA claims and solicited 1,590 text messages from Defendant to manufacture a lawsuit and asserted four counterclaims: (1) willful and wanton misconduct, (2) common-law fraud, (3) breach of express contract, and (4) breach of the implied covenant of good faith and fair dealing.  (ECF 6).  Plaintiff ultimately moved to dismiss the complaint with prejudice while claiming that he did not solicit text messages from Defendant, (ECF 31; ECF 31-1 at 1), which the Court granted, (ECF 36; ECF 37).

With respect to Defendant's counterclaims, the Court granted Plaintiff's counsel's second motion to withdraw, (ECF 45), and Defendant moved for summary judgment, citing Plaintiff's failure to participate in discovery, (ECF 48; ECF 50 at ¶¶ 14-15; ECF 52 at 1).  After Plaintiff failed to respond to the Court's order to show cause why his answer to counterclaims

2

should not be struck and default entered against him for failure to participate in discovery, (ECF 54 at 4-5), the Court filed an opinion holding that entry of default judgment against Plaintiff was warranted pursuant to Federal Rule of Civil Procedure 37 and provided Defendant with an opportunity to supplement the record with support for its counterclaims and requested damages, (ECF 55 at 6-8; ECF 56).

After Defendant filed its supplemental brief and affidavit regarding damages, the Court issued an opinion and order entering default judgment against Plaintiff as to Defendant's breach-of-contract counterclaim,[1] declining to award damages due to Defendant's failure to provide support for its requested fees and costs, and providing thirty days for Defendant to supplement its application for attorney's fees and costs.  (ECF 62; ECF 63).  Pending before the Court are Defendant's supplemental brief in support of its request for attorney's fees, (ECF 64), and supporting declaration and other exhibits, (ECF 65; ECF 65-1; ECF 65-2; ECF 65-3).

---

[1] The basis for awarding Defendant attorney's fees and costs in this matter is contractual.  Defendant's User Terms of Service state that "[i]n any action or proceeding to enforce rights under the User Terms, the prevailing party will be entitled to recover its reasonable costs and attorney's fees."  (ECF 6-4 at 4).

3

**II.   Discussion**

   **A. Jurisdiction**

   The Court has jurisdiction over Defendant's counterclaims because the parties are of different states and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. 1332(a); see also Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 836 (3d Cir. 2011) ("Generally speaking, the dismissal of the complaint 'will not preclude adjudication of a counterclaim over which the court has an independent basis of jurisdiction.'" (quoting Rengo Co. Ltd. v. Molins Mach. Co., Inc., 657 F.2d 535, 539 (3d Cir. 1981)).

   **B. Lodestar Analysis**

   "The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  McKenna v. City of Phila., 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  "The hourly rate to be determined is a reasonable rate at the time of the fee application, not at the past dates when services may have been rendered."  Warner v. Twp. of S. Harrison, No. 09-6095, 2013 WL 3283945, at *7 (D.N.J. June 27, 2013).  Generally, unless the special expertise of distant counsel is necessary or local counsel is unwilling to accept the case, "the relevant

4

rate is the prevailing rate in the forum of the litigation." See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005). The forum rate in this vicinage is that of the Philadelphia/New Jersey legal market. Sidewinder Films, LLC v. Sidewinder Films, LLC, No. 19-13992, 2022 WL 6964829, at *8 (D.N.J. Oct. 11, 2022).

In addition to identifying a reasonable forum rate, courts must also review hours expended and exclude billed hours that are "excessive, redundant, or otherwise unnecessary." McKenna, 582 F.3d at 455 (quoting Hensley, 461 U.S. at 434). Lodestar calculations contemplate burden-shifting analyses in which parties opposing the awarding of fees make specific objections, "[t]he court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party." See Interfaith Cmty. Org., 426 F.3d at 711 (citing Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989)); see also Virtua Health, Inc. v. Diskriter, Inc., No. 19-21266, 2020 WL 4282752, at *5 (D.N.J. July 27, 2020) (noting that the opposing party failed to address the reasonableness of the fees sought and thus the court was not obligated to review the proponent's billing records "line by line"); N.V.E., Inc. v. Palmeroni, No. 06-5455, 2012 WL 3961342, at *5 (D.N.J. Sept. 10, 2012) (declining to reduce time entries, despite the court's belief that they were excessive, finding

5

that the "Court cannot, of its own accord, reduce time entries to which [the opponent] did not specifically object").

### III. Analysis

Defendant seeks to recover $160,729.69 in legal fees and $1,247.13 in costs incurred in this matter for a total of $161,976.82. (ECF 64 at 10). In consideration of the proffered support for the rates, hours, and related expenses sought, the Court will award $160,602.37.

#### A. Applicable Rates

Two attorneys – Paul Bond and Mark Melodia – represented Defendant throughout this case, first at the law firm of Reed Smith and then at Holland & Knight. (Id. at 4; ECF 65 at ¶ 8). Bond had sixteen years of experience when this matter began and currently serves as an equity partner and member of Holland & Knight's Data Strategy, Security & Privacy Team, (ECF 65 at ¶ 10), while Melodia serves as the head of the firm's Data Strategy, Security & Privacy Team and is also an equity partner who possessed thirty years of experience when this case started, (id. at ¶ 11). During their representation, Bond's rate remained at $600.00 per hour and he expended 142.4 total hours on this case, 43.4 while at Reed Smith and 99.0 with Holland & Knight. (Id. at ¶¶ 13, 26). Melodia's rate for his 7.3 hours worked while at Reed Smith was $845.00 per hour, which increased from $845.00 during his start at Holland & Knight in 2018 to

6

$855.00 from September 2018 to September 2019 to $895.50 from October 2019 to September 2020 to $976.50 beginning in May 2021 for a total of 19.4 hours expended. (Id. at ¶¶ 13, 21 n.3, 26).[2]

In addition to Bond and Melodia, several associate attorneys billed hours. At Reed Smith, Bretta T. Oluyede, with three years of experience at the start of the case, worked 43.4 hours at a rate of $360.00 per hour. (Id. at ¶¶ 12-13). Three associate attorneys at Holland & Knight also contributed hours: (1) Zalika Pierre, who was a new attorney at the beginning of her representation, for 42.3 hours at rates of $430.20 per hour from April 2018 to May 2019, $544.50 from July 2019 to August 2019, and $571.50 from October 2019 through January 2020; (2) Esther D. Clovis, who had two years of experience when she began working on the case, for 25.4 hours at rates of $400.50 an hour in September 2019 and $445.50 from December 2019 to August 2020; and (3) Sophie Kletzien, presently with two years of experience, at a rate of $405.00 per hour for 14.5 hours. (Id. at ¶¶ 23-26).[3]

---

[2] Bond's declaration calculates 17.6 hours expended by Melodia on this case while working at Holland & Knight, (ECF 65 ¶ 26); however, the summaries provided in the billing records total 19.4 hours, (ECF 65-3). The Court also notes that the billing records show rates charged by Melodia of up to $1,093.50. (Id. at 67).

[3] Defendant is not seeking hours expended by paraprofessionals and other staff from either firm, which would have amounted to an additional $1,471.15. (Id. at ¶¶ 13 n.1, 26 n.4).

7

In support of the requested rates, Defendant provides excerpts of the 2022 Real Rate Report by Wolters Kluwer ELM Solutions, (ECF 65-1), which it correctly notes has been relied upon in this District, (ECF 64 at 6-7); see also Sabinsa Corp. v. HerbaKraft, Inc., No: 14-cv-04738, 2022 WL 17446485, at *4 n.3 (D.N.J. Dec. 6, 2022) (recognizing the Real Rate Report as "generally regarded as the legal industry's leading benchmark for law firm rates and staffing trends based on actual invoice data"). The excerpt provided lists the Philadelphia litigation partner first-quartile rate at $485.00 per hour, the median rate at $636.00 per hour, and the third-quartile rate at $837.00 per hour and the litigation associate first-quartile rate as $365.00 per hour, the median rate at $430.00 per hour, and the third-quartile rate at $530.00 per hour. (ECF 65-1 at 8). The Court, in exercising its discretion, see McKenna, 582 F.3d at 455, accepts that the representation provided by attorneys at Reed Smith and Holland & Knight warrant the third-quartile rates and notes that the majority of the rates requested fall below those thresholds. The two exceptions are all of Melodia's rates Pierre's rates from July 2019 on.

Defendant contends that the Real Rate Report does not provide fourth quartile rates, which would be applicable to both Reed Smith and Holland & Knight, and that courts within this District have awarded fees at rates higher than those requested.

8

(ECF 64 at 8, 10 n.7). The Court finds that the cases cited are distinguishable from the present matter. NXIVM Corporation v. Sutton applied New York law to rates set forth or contemplated in a retainer agreement, No. 06-1051, 2019 WL 4010859, at *12-13 (D.N.J. Aug. 26, 2019), while In re Schering-Plough Corp. pertained to a lodestar cross-check of a percentage-of-recovery award rather than a "full-blown lodestar inquiry," Nos. 08-397 & 08-2177, 2013 WL 12174570, at *28-29 (D.N.J. Aug. 28, 2013) (quoting In re AT&T Corp., 455 F.3d 160, 169 n.6 (3d Cir. 2006)). It may be that the services provided by Reed Smith and Holland & Knight warrant fourth-quartile rates, but Defendant – importantly – does not identify what those rates are or whether the rates requested nonetheless exceed them.

"The party seeking a fee award bears the burden of establishing the reasonableness of the fee." Tomasko v. Ira H. Weinstock, P.C., 357 Fed. Appx. 472, 478 (3d Cir. 2009) (citing Interfaith Cmty. Org., 426 F.3d at 703 n.5). The Court, having concluded that Defendant has not sustained its burden with respect to the rates of Melodia and Pierre, will therefore adjust the rates downward to the third-quartile threshold for each for a total reduction of $1,374.45.[4] See L.J. ex rel. V.J.

---

[4] Billing records provided by Defendant (ECF 65-2; ECF 65-3), show that Melodia billed at $845.00 per hour for 7.3 hours while at Reed Smith and then, while at Holland & Knight, $855.00 per hour for 14.0 hours, $895.50 per hour for 3.0 hours, $976.50 per

9

v. Audubon Bd. of Educ., 373 Fed. Appx. 294, 297 (3d Cir. 2010) ("Once a district court finds that the prevailing party has failed to sustain its burden with respect to a reasonable market rate, it must use its discretion to determine the market rate.").

## B. Hours Requested

Having made its determination as to reasonable rates to apply, the Court moves on to the hours requested. Defendant seeks to recoup fees expended over 296.6 billed hours, (ECF 64 at 10), 97.8 from Reed Smith and 198.8 from Holland & Knight, (ECF 65 at ¶¶ 13, 26).[5]

---

hour for 1.5 hours, and $1,093.50 for 0.9 hours. The Court has multiplied the difference between these rates and the $837.00 per hour figure supported by the Real Rate Report by the number of hours at each rate for a total reduction of $926.00. Similarly, the Court identified 15.1 total hours billed by Pierre at above the supported $530.00 rate – 6.6 hours at $544.50 per hour and 8.5 hours at $571.50 per hour. Multiplying the differences between the sought and supported rates by the hours worked results in a total reduction of $448.45.

[5] A review of the summaries within Holland & Knight's billing records shows that 213.3 hours appear to have been billed by partners and associates. (ECF 65-3). The Court acknowledges that Defendant has voluntarily excluded the fees of non-attorneys and an hour of Bond's time, (ECF 65 at ¶ 26 n.4), but the difference between the 213.3 hours in the billing records and 198.8 hours in the declaration are not explained. This difference does not appear to be merely arithmetic. The fees for professional services in the billing records total $120,918.84 and, even subtracting the $1,964.40 voluntarily excluded, still results in a difference of $2,472.80 between what is reflected in the billing records and what is sought in the briefing. Exercising its discretion, and assuming this discrepancy was not unintentional, the Court will not adjust the

At the outset, the Court notes that Plaintiff has not participated in this case since his counsel moved to withdraw three years ago. As part of this willful blindness to the proceedings that have continued against him, Plaintiff has not provided up-to-date contact information, though electronic filings have continued to be sent to former counsel, and has not filed any opposition to Defendant's request for attorney's fees and costs. The Court will therefore not adjust the hours requested downward sua sponte. See Interfaith Cmty. Org., 426 F.3d at 711; N.V.E., Inc., 2012 WL 3961342, at *5.

Though the Court is therefore not required to examine Defendant's supporting billing records line by line, see Virtua Health, Inc., 2020 WL 4282752, at *5, it nonetheless reviewed the submissions and concludes that the hours requested are reasonable. Importantly, the Court notes that Defendant's billing records appropriately provide sufficient detail of each task billed for to the tenth of an hour, who performed the work, and their position and billing rate. See United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 291 (3d Cir. 2007) ("A request for fees must be accompanied by 'fairly definite information as to hours devoted to various general activities . . . and the hours spent by various classes

---

hours sought upward from what Defendant has expressly sought.

11

of attorneys.'" (quoting Evans v. Port Auth of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001))). The Court further finds that the hours billed were a reasonable consequence of Plaintiff's institution of this action and resulting investigations and motion practice, which Defendant has credibly asserted as stemming from an illegitimate, manufactured claim.

For completeness, the Court acknowledges that Defendant was successful in just one of its four asserted counterclaims, breach of contract. Unsuccessful claims based on facts and legal theories distinct from successful claims cannot be compensated, therefore courts must determine whether the successful and unsuccessful claims were related and whether the prevailing party's successful outcome provides a satisfactory basis for basing the fee award on the hours reasonably expended. See Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598, 605 (D.N.J. Apr. 9, 1998) (citing Hensley, 461 U.S. at 434-35). When claims center on the same events and cannot be separated out claim-by-claim, a court does not abuse its discretion by declining to adjust the award downward. See Boles v. Wal-Mart Stores, Inc., 650 Fed. Appx. 125, 130 (3d Cir. 2016).

Here, the Court concludes that counsel's representation broadly "enforce[d Defendant's] rights under the User Terms," (ECF 6-4 at 4), and revolved around the same set of facts – Plaintiff's use of an automated feature to send himself text

12

messages and create a TCPA claim. Some of Defendant's counterclaims were made in the alternative and failed primarily because the Court determined that breach of contract was the appropriate cause of action. (ECF 62 at 17-18, 23-24 (rejecting Defendant's common-law fraud claim as the damages sought flowed from contract and were barred by the economic loss doctrine and concluding that Defendant's counterclaim under the implied covenant of good faith and fair dealing could not be sustained as it alleged the same conduct that supported the successful breach-of-contract counterclaim)); see also Hensley, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). Defendant's counsel produced an excellent result in this matter as its efforts resulted in Plaintiff moving to dismiss the complaint and entry of default judgment under a breach-of-contract theory that has enabled Defendant to recoup its legal fees and costs. Therefore, the Court will not reduce the hours requested.

### C. Costs

Finally, Defendant seeks $1,247.13 in costs; $1,166.72 expended by Holland & Knight and $80.41 spent by Reed Smith. The Court has reviewed Defendant's billing records and calculated that $1,097.82 of Holland & Knight's costs stemmed

13

from online research such as Westlaw and Lexis fees, $54.45 were from transcript fees, and $14.45 covered copies and postage. (ECF 65-3). A total of $47.86 of Reed Smith's costs were Westlaw and Pacer fees, with an additional $16.95 for postage and $15.60 for printing and duplication. (ECF 65-2).

The Court holds that recovery of such costs is reasonable. See Einhorn v. Dimedio Lime Co., No. 13–3634, 2015 WL 5920911, at *3 (D.N.J. Oct. 9, 2015) (permitting recovery of $825.56 in search, photocopy, postage, and related costs). Furthermore, the sum requested is in line with similar costs previously approved of within the vicinage. See Sciore v. Phung, 1:19-cv-13775, 2022 WL 17446505, at *4 (D.N.J. Dec. 6, 2022) (concluding that $1,039.75 in Lexis costs were compensable as a sanction); Unite Here, Local 54 v. City of Atlantic City, No. 11–6273, 2012 WL 1455249, at *5 (D.N.J. Apr. 26, 2012) (finding $1,150.82 in filing and Westlaw fees to be reasonable). Therefore, the Court will award the costs requested.

**IV. Conclusion**

For the reasons stated above, the Court will award $160,602.37 in attorney's fees and costs – the $161,976.82 requested minus the Court's $1,374.45 rate adjustment.

An Order consistent with this Opinion will be entered.

Date: December 27, 2022            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

14